Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2790 | **DATE** | November 13, 2000 |
| **CASE TITLE** | *Children's Surgical Foundation vs. National Data Corporation* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The court grants defendant's motion for partial dismissal [3-1]. Accordingly, those portions of plaintiff's complaint that seek damages in excess of the contractual damage-limitation clause are dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | NOV 14 2000 date docketed | 14 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 NOV 13 PM 4:12 | | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CHILDREN'S SURGICAL )
FOUNDATION, INC., an Illinois not for )
profit corporation, )
)
)
Plaintiff, )
)
v. ) Case No: 00 C 2790
)
NATIONAL DATA CORPORATION, a ) Judge James H. Alesia
Delaware corporation, )
)
Defendant. )

**DOCKETED**
**NOV 1 4 2000**

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court grants defendant's motion for partial dismissal.

## I. BACKGROUND

Plaintiff Children's Surgical Foundation, Incorporated ("plaintiff") has brought a breach of contract action against defendant National Data Corporation ("defendant"). In its complaint, plaintiff alleges that it entered into a contract with defendant whereby defendant would provide a variety of services for plaintiff, including billing and data processing. Plaintiff claims that defendant breached that agreement in several respects, including failing to properly code claims, to post payments, and to timely bill patients or payors. Further, plaintiff claims that, because of those breaches, it has suffered damages in excess of $6 million which it now seeks to collect

from defendant. In response, defendant has filed a motion for partial dismissal, arguing that plaintiff cannot state a claim for the amount of damages it alleges in its complaint.

In its motion, defendant asks the court to dismiss all portions of plaintiff's complaint that seek damages in excess of the limitation clause contained in the contract (which is attached to plaintiff's complaint as Exhibit A). Specifically, defendant contends that the contract entered into between plaintiff and defendant contained a damage-limitation clause which states:

> 9. <u>Limitation of Liability</u>. In the event of any error or omission in the performance of services hereunder, Company [Defendant] may, at its election, reperform the work at no additional cost to Client [Surgical]. NOTWITHSTANDING THE FOREGOING, IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THE COMPANY'S LIABILITY FOR ANY LOSS OR DAMAGE ARISING FROM ANY CAUSE WHATSOEVER SHALL BE LIMITED TO THE TOTAL AMOUNT BILLED OR BILLABLE TO CLIENT FOR COMPANY'S SERVICES IN THE BILLING PERIOD IN WHICH THE SERVICES THAT GAVE RISE TO THE LOSS OR DAMAGE WERE PERFORMED. THE LIABILITY HEREUNDER IS ESTABLISHED AS LIQUIDATED DAMAGES AND AS A LIMITATION OF LIABILITY AND NOT AS A PENALTY. . . .

(Pls. Compl., Ex. A at ¶ 9 (emphasis in original).)

In its current motion, defendant argues that this clause limits the amount of damages plaintiff can recover for any breach. Thus, defendant contends that, under the contract, plaintiff's exclusive remedy is for the amount of money it paid to defendant for defendant's services during the months in question – not the amount of money lost in plaintiff's receivables. In response, plaintiff argues that this limitation clause is unconscionable. Further, plaintiff argues that enforcement of that clause violates defendant's implied covenant of good faith and fair dealing.

## II. DISCUSSION

### A. Standard for Deciding a Motion Under Rule 12(b)(6)

In addressing the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987); *Cromley v. Board of Educ. of Lockport*, 699 F. Supp. 1283, 1285 (N.D. Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss it. *See* FED. R. CIV. P. 12(b)(6); *Gomez*, 811 F.2d at 1039. However, the court may only dismiss the claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

While the Federal Rules of Civil Procedure provide a liberal notice pleading standard, the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

### B. Unconscionability

In its motion for partial dismissal, defendant argues that the express terms of the contract provide for specific, limited remedies and that, under that contract, plaintiff is entitled to only those damages. Thus, defendant argues, plaintiff has failed to state a claim for damages in excess of $6 million. In response, plaintiff claims that the paragraph of the contract to which defendant refers is unconscionable.

First, there are no allegations in plaintiff's complaint that any part of the contract is unconscionable. In fact, plaintiff's complaint provides no notice of the theory of unconscionability, nor are any facts alleged which – even if taken as true – would support such a theory. The contract, therefore, is valid in its entirety and the plaintiff is bound by the express terms of that agreement. *See Posey v. Southwestern Bell Yellow Pages, Inc.*, 878 S.W.2d 275, 281 (Ct. App. Tex. 1994) (holding that an allegation of unconscionability is a matter in the nature of an avoidance which must be pleaded). Thus, under the contract's damage-limitation clause, plaintiff is limited to the amount of damages provided for in paragraph 9. Accordingly, the court grants defendant's motion for partial dismissal and dismisses those portions of plaintiff's complaint that seek damages in excess of the limitation clause expressed in paragraph 9 of the contract.

However, under Federal Rule of Civil Procedure 15(c), the court could allow plaintiff the opportunity to amend the complaint to include the allegations of unconscionability as a defense. Therefore, the court will address the merits of plaintiff's claim that the limitation provision was unconscionable.

In a commercial setting, the terms of a contract – and its allocation of risks among the parties – are generally accepted by the courts. Further, Texas law allows contracting parties to limit their liability in damages to a specified amount.[1] *See Global Octanes Texas, L.P. v. BP*

---

[1]The contract contains a choice of law provision which states that the agreement is governed by Texas law. In this case, the original party to the contract – defendant's predecessor – was a Texas corporation. Although plaintiff cites to Illinois law in its brief and states that much of the events took place in Illinois, plaintiff does not contend that the choice of law

*Exploration & Oil Inc.*, 154 F.3d 518, 521 (5th Cir. 1998) (quoting *Vallance & Co. v. Anda*, 595 S.W.2d 587, 590 (Tex. Ct. App. 1980)). Courts will only invalidate a contract when it is so unfair and one-sided that it violates all notions of fair play and justice and is unconscionable. *See Arkwright-Boston Mfr. Mut. Ins. Co. v. Westingthouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988). However, while unconscionability prevents oppression and unfair surprise, it is not used to disturb the allocation of risks because of superior bargaining power. *Lindemann v. Eli Lilly & Co.*, 816 F.2d 199, 204 (S.D. Tex. 1987).

To determine whether a contract is unconscionable, the court must look at the circumstances surrounding the agreement, the alternatives which were available to the parties at the time the contract was entered into, the bargaining ability of the parties, and whether the contract is illegal or against public policy. *See Lindemann*, 816 F.2d at 203. However, mere inequality of bargaining power is not a sufficient reason to hold a contract unenforceable. *See In re Turner Bros. Trucking, Co.*, 8 S.W.3d 370, 377 (Tex. Ct. App. 1999).

In general, the courts have enumerated several factors to consider in deciding whether a contract is unconscionable: (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "nonbargaining" ability of one party; (4) whether the contract was illegal or against public

---

provision is unenforceable. Thus, the court will give effect to the contract provision and follow the substantive law of Texas in deciding this case. *See Fulcrum Finan. Partners v. Meridian Leasing Corporation*, Nos. 99-2417, 99-2459, 2000 WL 1593886, at *6 (7th. Cir. Oct. 26, 2000) (holding that a contract's choice-of-law clause should be respected as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy).

policy; and (5) whether the contract was oppressive or unreasonable. *Turner Bros.*, 8 S.W.3d at 376-77.

More specifically, the Texas courts have developed a two-part test to determine whether a contract is unconscionable. First, the court must address the procedural aspect of the contract, meaning how did the parties arrive at the terms in controversy. *Turner Bros.*, 8 S.W.3d at 376 (citing *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App. Ct. 1996)). Second, the court must look at the substantive aspect of the contract, meaning are there legitimate, commercial reasons justifying the terms of the contract. *Id.* The first question, dealing with procedural unconscionability, is concerned with assent and focuses on the facts surrounding the bargaining process. *Morrison v. Amway Corp.*, 49 F. Supp. 2d 529, 534 (S.D. Tex. 1998). The second question, dealing with substantive unconscionability, is concerned with the fairness of the resulting agreement. *Id.* Under Texas law, the party asserting unconscionability bears the burden of proving both the substantive and procedural unconscionability of the contract. *Turner Bros.*, 8 S.W.3d at 377.

### 1. **Procedural Unconscionability**

A contract may be procedurally unconscionable if the plaintiff presents evidence of the seller's overreaching or sharp practices combined with the buyer's ignorance or inexperience. *American Stone Diamond, Inc. v. Lloyd's of London*, 934 F. Supp. 839, 844 (S.D. Tex. 1996) (citing *Arkwright-Boston Mfr.*, 844 F.2d at 1184). The commercial context of a contract is important in determining procedural unconscionability. *See Lindemann*, 816 F.2d at 204. For

example, in *Lindemann*, the court considered the unconscionability of a damages limitation clause contained in a sales agreement for the purchase of an herbicide. In that case, the plaintiffs were "experienced and sophisticated" farmers who were familiar with the herbicide at issue in the litigation. In finding that the plaintiffs failed to prove procedural unconscionability, the court found that (1) the *Lindemann* plaintiffs knew or should have known of the contractual limitation of damages and (2) an arm's length relationship is presumed in a UCC, commercial transaction. *Id.* at 203-04. Likewise, in this case, plaintiff is a sophisticated hospital, comprised of equally sophisticated doctors and business people, with experience in billing patients and payors. As such, plaintiff should have known of the risks involved in the untimely billing of certain patients/payors. Further, although the contract at issue is not a sales agreement necessarily covered by the UCC, this was a commercial transaction and, accordingly, an arm's-length relationship exists between the parties.

Plaintiff, however, argues that the contract is unconscionable because the agreement was wholly one-sided. In support of this argument, plaintiff contends that defendant had total control over the plaintiff's accounts, receivables, and collection data and because the contract gave defendant power of attorney for plaintiff. The court finds these arguments unpersuasive. The defendant was hired by the plaintiff to provide a billing service for plaintiff so it is not surprising that defendant had control over plaintiff's accounts, receivables and collection data – this information, provided by the plaintiff in the first place, was necessary for defendant to perform its duties.

Further, this was a commercial contract with sophisticated, commercial entities on either side. Plaintiff claims that it was not represented by an attorney and, therefore, it was unable to understand the risk it was taking in signing the contract. However, in both its complaint and its response brief, plaintiff clearly states that many of the bills had to be submitted within a specific time frame in order for the amount due to be collectable. Thus, plaintiff was aware of the fact that if certain claims were not filed within a certain time frame, then that amount would be unrecoverable. As a sophisticated entity with equally sophisticated representatives, plaintiff should have been able to understand the risk involved in untimely billing. The court finds that any claim of ignorance would be unconvincing. Plaintiff knew or should have known of the risk involved, regardless of the presence of an attorney, and should have considered that risk before signing a contract that contained such a damage-limitation clause as the one in the present agreement.

Further, there does not seem to be any real disparity in bargaining power. Plaintiff was a business looking for a company to handle its billing – it did not have to enter into the contract with defendant but could have continued to do their own billing or hired another firm to do so. In fact, in its response, plaintiff states that defendant was one of a few firms who handle such services. (Pl. Resp. Br. at 3.) Although plaintiff claims that defendant had the technology which plaintiff needed, plaintiff could have declined defendant's services if the contract was unsatisfactory to plaintiff and gone with another company. Also, plaintiff does not state that it was not aware of the limited-liability clause. In fact, that clause was in bold-face language.

Thus, the damage-limitation clause would not have been a surprise. Finally, while plaintiff says that it did not negotiate the terms of the contract, plaintiff never states that it attempted to negotiate but was prevented from doing so by defendant or that defendant offered a "take-it-leave-it" contract. Thus, in looking at the totality of circumstances surrounding the contract's formation, the court finds that the agreement – including the limitation of liability clause – is not procedurally unconscionable. Therefore, plaintiff's damages amount is governed by the contract.

### 2. **Substantive Unconscionability**

A contract may be substantively unconscionable if the terms are one-sided or oppressive. *American Stone Diamond*, 934 F. Supp. at 844 (citing *Arkwright-Boston Mfr.*, 844 F.2d at 1184). Texas courts have stated that substantive unconscionability results when "no man in his senses and not under a delusion would enter into and ... no honest and fair person would accept" a contract on such terms. *See Lindemann*, 816 F.2d at 204. In determining whether a contract is substantively unconscionable, the court looks at the fairness of resulting agreement. *See id.; American Stone Diamond*, 934 F. Supp. at 843-44.

Defendant argues that the clause is a valid limitation of liability in damages, which is recognized under Texas law. The court agrees. The parties in this case assumed certain risks and the contract detailed those risks (for example, paragraph 9 clearly states that the liability was limited even in instances of omission). Plaintiff could have opted to find another means of billing if it did not want to assume such a risk. Thus, while the contract may not be favorable

for plaintiff, it is a fair agreement which provides a minimum adequate remedy for plaintiff. *See Cognitest Corp. v. Riverside Publ'g. Co.,* 107 F.3d 493, 499 (7th Cir. 1997) (holding that a limitation provision is unconscionable only if it deprives a party of a minimum adequate remedy); *see also Arkwright,* 844 F.2d at 1180, n.13 (stating that contract need only provide a minimum adequate remedy). That clause is not invalid and plaintiff is still entitled to that amount. Thus, plaintiff cannot show that paragraph 9 of the contract is substantively unconscionable. Plaintiff's claim for damages is limited to the relief provided in paragraph 9 of the contract.

Plaintiff cannot show that the contract, and the damage-limitation clause contained in that contract, is either procedurally or substantively unconscionable. Accordingly, the court grants defendant's motion for partial dismissal and plaintiff's damages claim is limited to the amount specified in paragraph 9 of the contract.

### C. <u>Implied Covenant of Good Faith and Fair Dealing</u>

In response to defendant's motion to dismiss, plaintiff also argues that enforcement of the liability-limiting clause would result in a breach of defendant's implied covenant of good faith and fair dealing because the clause deprives plaintiff from the benefit of its bargain. Defendant replies that Texas law does not recognize this implied warranty and, even if it did, the implied covenant does not apply because the express, unambiguous terms of the contract are controlling.

Some Texas courts have held that it is "well established under Texas law that 'accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done....'" *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988) (quoting *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947)). However, more recently, Texas courts have held that there is no implied covenant of good faith and fair dealing for all contracts, but that covenant is reserved for those situations where there is a "special relationship" – such as that of a fiduciary relationship – between the parties. *See Crim Truck & Tractor Co. v. Navistar Int'l Trans. Corp.*, 823 S.W.2d 591, 595, n.5 (Tex. 1992) (citing *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)).

Plaintiff argues that, if enforced, that paragraph would breach this implied duty. The court disagrees. First, in the present case, the contract at issue is commercial in nature and, therefore, lacking in any "special" relationship between plaintiff and defendant. The court, therefore, doubts that any such implied covenant exists between the two parties under Texas law. Second, the enforcement of this clause limits the amount of damages plaintiff could receive, it does not relieve defendant of any implied duty to perform with "care and skill." Thus, the enforcement of such a clause would not breach this limited covenant. Further, at issue in the present dispute is the express clause contained in paragraph 9 of the contract. The court will not allow an implied duty – that may or may not even exist – to control over the express terms of the contract. Thus, the limited remedies provided for in the damage-limitation clause in paragraph

9 of the contract are exclusive and enforceable. Accordingly, the court grants the defendant's partial motion for dismissal.

### III. CONCLUSION

For the foregoing reasons, the court grants defendant's motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) to the extent it seeks to limit plaintiff's damages claim to the amount provided for in paragraph 9 of the contract attached to plaintiff's complaint as Exhibit A.

Date: **NOV 13 2000**

James H. Alesia
United States District Judge